# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **SONYA MASSEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | Civil Action Number |
| **BLAKE L. DORNING, MADISON** | ) | **5:18-cv-02045-AKK** |
| **COUNTY, ALABAMA, MADISON** | ) | |
| **COUNTY COMMISSION, and** | ) | |
| **JERMIE HOWELL,** | ) | |
| | | |
| **Defendants.** | | |

## MEMORANDUM OPINION AND ORDER

Sonya Massey, a Deputy Sheriff at the Madison County Sheriff's Office, alleges that she was discriminated against at work based on her gender. She asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1983 against three defendants: Blake Dorning, the Madison County Sheriff; Jeremy Howell, the director of the personnel department of Madison County; and against Madison County.[1] The defendants each filed motions to dismiss the claims against them. Docs. 29, 31, 33. For the reasons explained below, the motions are granted in part and denied in part.

---

[1] Technically, Massey sues Madison County and the Madison County Commission. The Madison County Commission is the governing body of Madison County; as such, the "liability analyses for the two entities are identical," and the court treats these two defendants collectively as "the County." *Marsh v. Butler County*, 268 F.3d 1014, 1024 n.3 (11th Cir. 2001) (en banc).

# I. Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss it. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id.* (citation omitted). In reviewing a motion to dismiss under Rule 12(b)(6), the court "must accept all facts in the complaint as true and view those facts in the light most favorable to the plaintiff." *Sun Life Assurance Co. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018).

Furthermore, to establish discriminatory intent at the motion to dismiss stage, Massey does not have to allege a prima facie case under *McDonnel Douglas*. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Instead, Massey need only "provide enough factual matter (taken as true) to suggest intentional [gender] discrimination." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (citation omitted).

## II. Background

### A. Factual Allegations

In July 2013, Massey began working in the Madison County Sheriff's Office as a Deputy Sheriff. Doc. 25 at 5. As a condition of her employment, Massey agreed to abide by the Madison County Employee Handbook and the Madison County Sheriff's Office Policy and Procedure Manual. *Id.* at 5–6. The Employee Handbook prohibits "all forms of discrimination," and sexual harassment specifically. Handbook at 56.[2] Nonetheless, Massey alleges that there is a pervasive culture of harassment at the sheriff's office.

The sheriff's office is predominantly male, with no female supervisors. Doc. 25 at 6. At an orientation meeting, Sheriff Dorning told another female employee, Erica Cagle, that the office was a "male dominant workplace" where "men do what men do." *Id.* at 7. Massey alleges that, essentially, Sheriff Dorning communicated that he would not take any disciplinary action against male employees for offensive or discriminatory behavior, and he expected female employees to accept such behavior without complaint. *Id.*

Massey alleges that female employees were subjected to offensive conduct "[o]n a near daily basis." *Id.* at 9. She alleges, inter alia, that: male supervisors

---

[2] Massey did not attach the Employee Handbook to the complaint. Nevertheless, the court will consider the document without converting the motion into one for summary judgment because it is central to Massey's claim and its authenticity is undisputed. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

and employees referred to female arrestees as whores and prostitutes, and "comment[ed] about the smell of [their] private parts," *id.*; male co-workers openly discussed having sex with married female co-workers, *id.*; they explicitly stated their sexual desires regarding female co-workers and openly made crude comments about their breasts and backsides, *id.*; and that the men in the office also called their female co-workers "whores" and "bitches," *id.* at 10.[3] Massey says she was personally exposed to some of this behavior, but acknowledges that not all of it was directed at her. She alleges that Sheriff Dorning was physically present in the office and thus was able to personally observe this conduct. *Id.* at 6.

Massey also alleges that her supervisor, Sergeant Gary Cross, harassed and assaulted her in July 2015. Before the assault, Sergeant Cross searched Massey's phone without her permission and found a partially nude picture of her. Doc. 1-1 at 6. After that incident, Sergeant Cross started asking Massey to send him nude pictures of her. *Id.* at 7. Then in the pre-dawn hours of July 20, 2015, Massey and Sergeant Cross were parked on a gravel road, standing by their cars and making idle conversation while they waited for calls. *Id.* at 5. At some point, Sergeant Cross grabbed Massey, pulled her tightly against his body, and tried to kiss her. *Id.*

---

[3] Massey took great lengths in her complaint to avoid repeating the offensive language. The court does not recite "this vulgar language lightly, but only because its full consideration is essential to measure whether these words and this conduct could be read as having created an environment that a reasonable person would find hostile or abusive." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 803 (11th Cir. 2010) (en banc).

at 6. Massey resisted, told him to stop, and struggled to get away. *Id.* When she finally broke free, she got in her car and left. *Id.*

Massey told a female co-worker about the incident; however, she did not report it. She believed that it would be futile to complain because of the hostile work environment, that she would be retaliated against, and that it would damage her career. Docs. 25 at 11, 1-1 at 7.

Ultimately, the incident became public two years later when, in November 2017, one of Massey's female co-workers filed a lawsuit against Sheriff Dorning and the County that referenced Sergeant Cross' alleged assault of Massey. Doc. 25 at 12; *see also Garcia v. Dorning*, No. 5:17-cv-01957-LCB. Another female co-worker filed a lawsuit in February 2018, referencing the same assault. Doc. 25 at 12; *see also Cagle v. Madison County*, No. 5:18-cv-00201-AKK. After these lawsuits were filed, Massey's superiors required her to provide information about the assault. Doc. 25 at 12.

Accordingly, on February 19, 2018, Massey filed a declaration attesting to the assault. Doc. 1-1 at 5–9. In the declaration, Massey also recounted an incident that transpired just a few days earlier, when she received a call to a residence to investigate a subject with a possible gun. Doc. 1-1 at 9. Protocol dictates that a deputy should have back-up in such situations. *Id.* Two male deputies were supposed to accompany Massey as back-up, but Sergeant Cross interfered and

prevented them from assisting. *Id.* By depriving her of back-up, Massey alleges that Sergeant Cross placed her life in jeopardy, in purported retaliation for reporting his assault. *Id.*

Massey sent the declaration to Sheriff Dorning and Director Howell, among others. Doc. 25 at 12. Thereafter, Massey was called a liar and became the subject of cruel gossip and disparaging comments by her co-workers and supervisors. *Id.*

About a month after submitting the declaration, Massey was required to report to the Internal Affairs Office of the Huntsville Police Department, a separate entity from the Sheriff's Office, for an "abusive 'criminal-style' interrogation." *Id.* at 12–13. The interrogators accused Massey of lying, and bullied and verbally abused her. *Id.* at 13. They questioned her in "an abusively hostile manner" about why she had not reported the assault by Sergeant Cross sooner, and also threatened her with discipline, including the loss of her job. *Id.*

The next month, Massey was required to report to Human Resources for an interview with Director Howell. *Id.* at 14. Director Howell expressed disbelief at Massey's accusations, stating that he had known Sergeant Cross for years and Cross would not have engaged in the alleged conduct. *Id.* Although Howell said that if this was a pattern, "we need to look into it," allegedly no further action was taken to investigate or remedy her accusations. *Id.*

The abusive interrogation and ostracization at work caused Massey to cry, lose sleep, become depressed, humiliated, and lose enjoyment of her job and her life. *Id.* at 13. The treatment purportedly also caused Massey to have an anxiety attack one day at work, for which she was transported by ambulance to a hospital for treatment. *Id.* Massey continued to be subject to cruel comments after she fell ill at work. *Id.*

Massey brings four claims against Sheriff Dorning and the County: (1) a Title VII claim for hostile work environment; (2) a Title VII claim for retaliation; (3) a § 1983 claim for gender-based discrimination; and (4) a § 1983 claim for failure to train and supervise. And she brings a single claim against Director Howell under § 1983 for failure to train. The defendants move to dismiss each claim. The court will address each claim in turn.

### III. Analysis

The court first addresses a basis for dismissal raised that is relevant to all claims. The defendants move to dismiss the complaint as an impermissible shotgun pleading. Massey's second amended complaint clocks in at 37 pages. For each claim, she incorporates the opening 52 paragraphs of facts and background. This is a quintessential shotgun pleading. *See Jackson v. Bank of Am.*, 898 F.3d 1348, 1354 (11th Cir. 2018) (defining a shotgun pleading as a complaint that

"incorporate[s] all of the factual allegations into each count without delineating which allegations pertained to each count").

The Eleventh Circuit has repeatedly condemned shotgun pleadings. *See Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 979 n. 54 (11th Cir. 2008) (couting "upward of fifty" opinions condemning shotgun pleadings). The Court has also been clear that a district court may "dismiss a shotgun pleading on that basis alone." *Jackson*, 898 F.3d at 1357. Notwithstanding these precedents, the court declines to do so. In the court's judgment, the complaint gives "the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

**A. Sheriff Dorning**

### 1. Title VII Claim for Hostile Work Environment

Title VII prohibits employers from discriminating in the workplace on the basis of sex. 42 U.S.C. § 2000e-2(a). There are two ways to establish gender-based harassment claims under Title VII. *See Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (en banc). First, the plaintiff could show that the employer took a "tangible employment action" against the employee because of the employee's gender. *Id.* A tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision

causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Massey does not allege a tangible employment action in the second amended complaint.

Alternatively, even if no tangible employment action is taken, sexual harassment may be actionable if it creates a "hostile work environment." *Reeves*, 594 F.3d at 807. A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted). This is the form of gender-based discrimination that Massey alleges.

> To establish a hostile-work-environment claim, a plaintiff must show:
>
> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Reeves*, 594 F.3d at 808. Sheriff Dorning argues that Massey failed to adequately allege that the harassment was sufficiently severe or pervasive; that she herself was subject to the harassment; and that Dorning, as the employer, is liable for the harassment. In other words, he challenges the fourth, second, and fifth elements.

Starting with the fourth element, whether harassment is either severe or pervasive enough to establish a hostile work environment is based on the "totality of the circumstances." *Id.* When evaluating these claims, courts should consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. The bottom line is whether "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).

But courts must avoid turning Title VII into a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "Simple teasing" and "offhand comments" are not enough to establish discrimination. *Id.* The statute is not meant to "reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." *Oncale*, 523 U.S. at 81. Instead, "it forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." *Id.* That said, a woman "cannot be forced to endure pervasive, derogatory conduct and references that are gender-specific in the workplace, just because the workplace may be otherwise rife with generally indiscriminate vulgar conduct." *Reeves*, 594 F.3d at 810. To

distinguish between indiscriminate objectionable conduct and actionable harassment, courts use their common sense to determine whether the offensive conduct is gender-specific. *See Reeves*, 594 F.3d at 810–12.

The court finds that Massey's allegations plausibly rise to the level of a hostile work environment. Sheriff Dorning, the head of the office, purportedly told a female employee at orientation that the sheriff's office was a "male dominant workplace" where "men do what men do." Doc. 25 at 7. If true, a reasonable factfinder could infer that the sheriff was communicating a custom where misconduct by male employees was tolerated and women were expected to accept such behavior. Massey further alleges that on "a near daily basis" male employees and supervisors openly discussed having sexual relationships with female employees; they explicitly stated their sexual desires about female employees, including making crude comments about their bodies; and they referred to female employees as "whores," "prostitutes," and "bitches." *Id.* at 9–10. This conduct is clearly gender-specific. It is also offensive and derogatory, and when it purportedly occurs on a "near daily basis" it is precisely the sort of behavior that exposes women to disadvantageous conditions in the workplace. *See Reeves*, 594 F.3d at 804–06 (finding similar conduct to establish a hostile work environment).

Turning to the second element, Sheriff Dorning argues that Massey fails to adequately allege that *she* was subjected to harassment, because she does not allege

that the complained-of comments were made to her. Massey says she was "exposed" to some of the comments, but she acknowledges that "[n]ot all of the specific unwelcome and offensive behavior described [in the complaint] was directed at" her. Doc. 25 at 10. The Eleventh Circuit has squarely rejected Dorning's argument: "[W]ords and conduct that are sufficiently gender-specific and either severe or pervasive may state a claim of a hostile work environment, even if the words are not directed specifically at the plaintiff." *Reeves*, 594 F.3d at 811. The Court explained why exposure to discriminatory conduct can be enough to create a hostile work environment:

> It is enough to hear co-workers on a daily basis refer to female colleagues as "bitches" [or] "whores" . . . to understand that they view women negatively, and in a humiliating or degrading way. The harasser need not close the circle with reference to the plaintiff specifically: "and you are a 'bitch,' too."

*Id.* For this reason, Massey's allegation that she was exposed to the conduct that created a hostile work environment is sufficient to state a claim.

As for the fifth element, Sheriff Dorning maintains that there is no basis for his liability as the employer. An employer is always responsible for its own conduct. *See Ellerth*, 524 U.S. at 758. Of course, when a person's "high rank in the company makes him or her the employer's alter ego," that person's conduct is attributable to the employer. *Id.* Likewise, because a "tangible employment decision" necessarily "requires an official act of the enterprise," a tangible

employment action "becomes for Title VII purposes the act of the employer." *Id.* at 762. An employer is also liable under this theory if "the employer's own negligence" caused the unlawful discrimination. *Id.* at 758. Thus, as it relates specifically to sexual harassment, an employer is negligent "if it knew or should have known about the conduct and failed to stop it." *Id.* at 759.

An employer can also be vicariously liable "for an actionable hostile environment created by a supervisor." *Id.* at 765. Before vicarious liability attaches, the employer can raise an affirmative defense with "two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* If the hostile work environment was created by a co-worker, rather than a supervisor, the employer must have been at least negligent to be liable.

Here, Sheriff Dorning is himself the employer (or is at least the alter ego of the Office of the Sheriff). As such, he is responsible for his own comments. Massey alleges that the other discriminatory conduct was perpetrated by a mix of male co-workers and supervisors. Doc. 25 at 9–10. At this stage, Massey fairly alleges that Sheriff Dorning knew or should have known about this conduct through her contention that he was physically present in the office. *Id.* at 6. It is a

plausible inference that a supervisor who was present in the office should have noticed the "near daily" conduct that Massey alleges. Thus, Massey fairly alleges a basis for the employer's liability via negligence.[4]

To close, Massey adequately pleads a hostile work environment claim against Sheriff Dorning. Therefore, the Sheriff's motion to dismiss this claim is due to be denied.

## 2. Title VII Claim for Retaliation

The antiretaliation provision of Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice" that Title VII forbids "or because he has made a charge, testified, assisted, or participated in any manner in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). An employer "discriminate[s] against" an employee in violation of this provision when the employer takes a "materially adverse" action against the employee because the employee engaged in protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*,

---

[4] The court does not analyze whether Sheriff Dorning is vicariously liable for the supervisors' conduct, because Massey did not specify which comments were made by supervisors and which by co-workers, so it is impossible to evaluate at this stage since hostile work environment claims are cumulative. The alleged assault by Sergeant Cross could also be relevant to a vicarious liability analysis, but Massey does not allege that it establishes negligence. She makes no allegation that Sheriff Dorning knew or should have known about the assault until it was mentioned in the other lawsuits by her co-workers in late 2017, and she does not mention a similar incident which Sheriff Dorning failed to stop after that date.

570 U.S. 338, 352 (2013). Thus, to establish a prima facie case the plaintiff must show that (1) she engaged in protected activity; (2) the employer imposed on her a materially adverse action; and (3) the employer took the adverse action because the plaintiff engaged in protected activity. *See Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012).

In his motion, Sheriff Dorning argues that Massey fails to allege a materially adverse action. An employer's action is materially adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68 (citation omitted). The statute is concerned with actions that would "deter victims of discrimination from complaining," rather than "petty slights or minor annoyances." *Id.* (citation omitted). This is an objective standard, judged by the totality of the circumstances. *Id.* at 68–69; *see also Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998) ("We need not and do not decide whether anything less than the totality of the alleged reprisals would be sufficient."). Protection under the statute is not limited to adverse employment action; it reaches retaliatory conduct by employers outside the employment context as well. *Burlington N.*, 548 U.S. at 67.

Massey alleges that after she reported the sexual assault, she was "required" to report to the Internal Affairs Office of the Huntsville Police Department ("HPD") for an "abusive 'criminal-style' interrogation." Doc. 25 at 12–13. At the

interrogation, she "was threatened with discipline and job loss." *Id.* at 13. Massey was also "required" to report to human resources for an interview with Director Howell. *Id.* at 14. Howell "expressed disbelief," stating that "he had known [Sergeant] Cross for years" and that "Cross would not do this." *Id.* Massey alleges that "[i]nformation obtained from [her] as a result of the investigation into her report of sexual assault was leaked to co-workers to intimidate or silence her." *Id.* at 18. As a result, she was subjected to "cruel gossip" and "disparaging comments" by co-workers and supervisors. Doc. 25 at 12. Massey alleges that "no effective action" was taken against Sergeant Cross. *Id.* at 14.

In her EEOC charge, Massey also alleges an incident where Sergeant Cross intervened to prevent her from having back-up on a potentially dangerous assignment, even though protocol required back-up in such situations. Doc. 1-1 at 9. This incident occurred about one week after the second lawsuit mentioning Sergeant Cross' alleged assault was filed. *Id.*; *see also* Doc. 25 at 12.

Sheriff Dorning points out that the HPD conducted the allegedly abusive interrogation. Title VII prohibits an employer from retaliating against an employee.[5] The HPD is not Massey's employer. However, the statute defines "employer" to include the employer "and any agent of" the employer. *See* 42

---

[5] The statute also prohibits employment agencies, joint labor-management committees, and labor organizations from retaliating against employees or applicants. *See* § 2000e-3. None of these other entities apply here.

U.S.C. § 2000e(b). The details are sparse, but if Massey was "required" to report to the HPD for an interrogation, it is reasonable to infer that the HPD had actual authority, or at least apparent authority, to investigate Massey's claim of sexual assault. *See* Restatement (Third) of Agency §§ 2.01–2.03 (Am. Law Inst. 2006). Consequently, the HPD's interrogation of Massey falls within the protection of the antiretaliation provision.

When viewed cumulatively, the adverse actions alleged by Massey plausibly amount to unlawful retaliation. Massey relies first and foremost on the allegedly hostile interrogation to establish retaliation. She alleges that the interrogation was hostile because she was "harshly interrogated, accused of lying, bullied, and verbally abused." Doc. 25 at 13. She complains that the police questioned her about why she did not report the assault earlier. *Id.* The court notes that Title VII requires employers to conduct a reasonable investigation of accusations of discrimination. *See Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1303–04 (11th Cir. 2007). In the course of this type of investigation—which does not have to be "a full-blown, due process, trial-type proceeding"—it is entirely appropriate to question whether the accuser is telling the truth and to ask why the accuser waited to report the conduct. *Id.* at 1304. That said, there is no reason why the investigators cannot be civil and the accuser cannot be treated respectfully. In this case, Massey alleges that the interrogators went further than questioning her

veracity. They threatened her with discipline and the loss of her job. Doc. 25 at 13. The court thus gives the interrogation some weight.

The court does not give any weight to the interview with Director Howell. Massey's complaint is that Director Howell "expressed disbelief" regarding her accusations. *Id.* at 14. It may not be best practice for a human resources representative to immediately express disbelief when an employee reports a sexual assault, but the representative does not engage in unlawful retaliation merely for conveying doubt about the accusation. A reasonable investigation "does not include a requirement that the employer credit uncorroborated statements the complainant makes if they are disputed by the alleged harasser." *Baldwin*, 480 F.3d at 1303. These cases are often uncorroborated and the accused generally denies the allegations, and "[t]he employer is not required to credit the statements on the [accuser's] side absent circumstances indicating that it would be unreasonable to do so." *Baldwin*, 480 F.3d at 1303–04. For this reason, the interview with Director Howell is not actionable retaliation.

More important are Massey's allegations that information was leaked about her sexual assault accusation, leading to "cruel gossip" and "disparaging comments" around the office. Doc. 25 at 12, 18. Though "petty slights" do not amount to materially adverse action, *Burlington N.*, 548 U.S. at 68, the Eleventh Circuit has long recognized claims of retaliatory harassment, *see Wideman*, 141

F.3d at 1456.  Furthermore, Massey alleges that Sergeant Cross prevented her from having back-up on a dangerous assignment.  These allegations contribute to the totality of the circumstances that ultimately adds up to a plausible claim of retaliation.

In the final analysis, if a victim of sexual harassment knew that her employer would leak her accusation, her co-workers and supervisors would ridicule her, her attacker would go unpunished, and that her colleagues would not provide her back-up on future, dangerous assignments, it well might "dissuade[] a reasonable worker from making or supporting a charge of discrimination."  *Burlington N.*, 548 U.S. at 68 (citation omitted).  As a result, the alleged conduct is "materially adverse," *id.*, and Massey fairly alleges a claim of retaliation against Sheriff Dorning.

### 3.  Section 1983 Claim for Equal Protection Violation

Section 1983 creates a cause of action against state and local officials for violations of federal rights.[6]  To maintain an action under § 1983, there must be an underlying violation of a constitutional right or a federal statutory right.  *See Rooney v. Watson*, 101 F.3d 1378, 1380–81 (11th Cir. 1996).  Massey bases her

---

[6] Section 1983 of Title 42 of the U.S. Code states in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Colombia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

§ 1983 claim on her right to equal protection under the Fourteenth Amendment.[7]

Specifically, she claims that Sheriff Dorning, acting under color of state law as

sheriff, violated her right to equal protection by discriminating against her because

of her sex. *See Cross v. State of Ala., State Dep't of Mental Health*, 49 F.3d 1490,

1507 (11th Cir. 1995) (recognizing a right under the equal protection clause to be

free from gender-based discrimination in public employment).

In employment discrimination cases, "Title VII and § 1983 claims have the

same elements where the claims are based on the same set of facts." *Quigg v.

Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (citation omitted).

For this reason, the elements for a hostile work environment claim, *see supra* part

III.A.1, are the same. Still, there are important differences between Title VII and

§ 1983 claims. *See Patterson v. County of Oneida*, 375 F.3d 206, 225–27 (2d Cir.

2004) (reviewing the differences).

For example, Title VII has procedural requirements that are not present in

§ 1983 claims. *See generally* 42 U.S.C. § 2000e-5 (outlining exhaustion

requirement with the EEOC and time periods for filing). Furthermore, a plaintiff

must bring Title VII claims against the employer, *Dearth v. Collins*, 441 F.3d 931,

---

[7] Massey could not bring her § 1983 claim based on her rights under Title VII, because Title VII contains its own remedy, and § 1983 cannot be used to vindicate a statutory violation when the statute itself provides a cause of action for violations of its terms. *See Thigpen v. Bibb County*, 223 F.3d 1231, 1238 (11th Cir. 2000); *see also Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 375–76 (1979).

933 (11th Cir. 2006), while § 1983 claims may be raised against qualifying individuals or entities, *see Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985). For related reasons, immunity issues apply to § 1983, but not to Title VII.[8] Significantly, vicarious liability is available under Title VII, but not under § 1983. *Compare Ellerth*, 524 U.S. at 765 (permitting vicarious liability in Title VII cases), *with Iqbal*, 556 U.S. at 676 (noting that "vicarious liability is inapplicable to . . . § 1983 suits"). In short, what is the same between the two types of claims is whether discrimination occurred and proving discriminatory intent. But who is liable for the discrimination can be quite different. *See Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1332 n.7 (11th Cir. 2003) (Barkett, J., dissenting) (stating that "the differences between Title VII and equal protection claims 'do not affect what is prohibited; they affect who can be sued and how the wrong can be

---

[8] Qualified immunity, which applies only to claims against government officials in their individual capacities, *see Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991), is unavailable in Title VII claims, since such claims must be brought against employers. Qualified immunity is at issue, however, in § 1983 claims against government officials in their individual capacities for monetary relief. *See D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995) (qualified immunity does not apply to claims for declaratory or injunctive relief).

Similarly, the application of state sovereign immunity is different. Title VII abrogates sovereign immunity, but § 1983 does not. *Quern v. Jordan*, 440 U.S. 332, 338–41 (1979) (holding that § 1983 does not abrogate sovereign immunity); *Fitzpatrick v. Butler*, 427 U.S. 445, 452 (1976) (holding that Title VII abrogates sovereign immunity). Thus, sovereign immunity prevents § 1983 claims against state entities directly and against state officials in their official capacities for monetary relief. Massey correctly avoids this issue, though, by bringing claims against Sheriff Dorning in his official capacity for declaratory and injunctive relief (pursuant to *Ex parte Young*, 209 U.S. 123 (1908)) and in his individual capacity for monetary relief.

remedied.'") (quoting *Bator v. State of Hawaii*, 39 F.3d 1021, 1028 (9th Cir. 1994)).

For this reason, the standard for determining Sheriff Dorning's liability under § 1983 is distinct. Because supervisors cannot be vicariously liable under § 1983, "a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Keith v. DeKalb County*, 749 F.3d 1034, 1047–48 (11th Cir. 2014). Direct participation is relatively straightforward. A causal connection can be established when: (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so";[9] (2) "a supervisor's custom or policy results in deliberate indifference to constitutional rights";[10] (3) "the supervisor directed the subordinates to act unlawfully"; or (4) the supervisor "knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* at 1048 (citation omitted).

Applying this standard, the court finds that Massey alleges facts that would plausibly establish Sheriff Dorning's supervisory liability under § 1983. Massey alleges that male co-workers and supervisors made "near daily" comments that

[9] To "constitute widespread abuse," the conduct "must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Id.* at 1048 (citation omitted).

[10] To be deliberately indifferent, a person must disregard a substantial risk of which she has knowledge. *See id.* at 1048.

were offensive, derogatory, and gender-specific.[11]  *Id.* at 9.  Because Sheriff

Dorning was purportedly "physically present" in the office, she fairly alleges that

he knew about the offensive behavior.  *Id.* at 6.  These allegations meet the

standard for widespread abuse of which a reasonable supervisor would have

known, and which Sheriff Dorning failed to correct.  Massey also alleges that

Sheriff Dorning told a female co-worker at orientation that the sheriff's office was

a "male dominant workplace" where "men do what men do."  Doc. 25 at 6–7.  At

the very least, these comments establish his direct participation in creating a hostile

work environment.  These comments could also plausibly be construed as

establishing a custom or policy that harassment against women would be tolerated.

Given Sheriff Dorning's alleged awareness of the ongoing harassment, such a

policy could well amount to deliberate indifference to a known substantial risk.[12]

---

[11] Sheriff Dorning repeats his argument that these comments do not establish a deprivation because the comments were not all directed at Massey.  This argument fails for the same reason as before.  *See supra* part III.A.1.  The Eleventh Circuit has held in the Title VII context that the offensive conduct need not be directed at the plaintiff, *Reeves*, 594 F.3d at 811, and the standard for what counts as discrimination is the same under § 1983.

[12] Under this claim, Massey realleges much of the retaliatory conduct complained of in her Title VII retaliation claim.  "[T]he right to be free from retaliation is clearly established as a first amendment right and as a statutory right under Title VII; but no clearly established right exists under the equal protection clause to be free from retaliation."  *Ratliff v. DeKalb County*, 62 F.3d 338, 340–41 (11th Cir. 1995).  Massey does not base her § 1983 claim on the First Amendment, so she may not bring a retaliation claim under § 1983.  Of course, some facts that may tend to establish retaliation could also be used to show discriminatory harassment, which is fair game for her § 1983 claim.  The main difference is why the person took the action: to retaliate against Massey for engaging in protected activity, or to discriminate against Massey because of her gender.  Massey alleges that the perpetrators engaged in the retaliatory conduct to "chill complaints."  Doc. 25 at 21.  Because Massey alleges that the motive was retaliatory, rather than discriminatory, the court does not consider this conduct for this claim.

The analysis does not end there: the court must decide whether Sheriff Dorning is entitled to qualified immunity.[13]  Qualified immunity protects public officials from suit if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To overcome this immunity, the plaintiff must show (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the violation.  *See Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009).  Invoking qualified immunity, Sheriff Dorning argues that Massey failed to show that the violation of her right to equal protection was clearly established.

The clearly established requirement is meant to provide "notice" to officials that "their conduct is unlawful."  *Saucier v. Katz*, 533 U.S. 194, 206 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 808 (2009). Accordingly, the key inquiry "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 202.  The Eleventh Circuit has outlined three ways by which a right may be clearly established: "(1) case law with indistinguishable facts . . . ; (2) a broad statement of principle within the Constitution, statute, or case law . . . ; or (3) conduct so

---

[13] To be clear, qualified immunity "protects a public official from liability for money damages in his or her individual capacity only." *Busby*, 931 F.2d at 772.  Sheriff Dorning's qualified immunity defense does not apply to the § 1983 claims against him for injunctive or declaratory relief. *See D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995).

egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis*, 561 F.3d at 1291–92. For a broad principle to clearly establish the law in a specific case, "it must do so with obvious clarity to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct" violated federal law. *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted). Only binding precedent can clearly establish the law. *Id.*

The Eleventh Circuit has long recognized "an equal protection right to be free from employment discrimination" based on gender. *Williams v. Consol. City of Jacksonville*, 341 F.3d 1261, 1268 (11th Cir. 2003). Of course, this is a broad principle, and qualified immunity usually requires more specificity. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017) ("[C]learly established law should not be defined at a high level of generality.") (citation omitted). That said, the Eleventh Circuit has sometimes required less specificity to "clearly establish the unlawfulness of *intentionally* discriminatory employment actions." *Williams*, 341 F.3d at 1270 (emphasis added); *see also Busby*, 931 F.2d at 775. In any case, there are a number of binding precedents establishing that it violates the equal protection clause to create a hostile work environment with widespread harassment. *See Cross*, 49 F.3d at 1503 (finding that it was a clearly established violation of the equal protection clause for a supervisor to do "nothing in response to knowledge of

a subordinate['s] sexual harassment and discrimination and the creation of a hostile work environment at the facility"); *see also Reeves*, 594 F.3d at 811–12 (finding that the widespread use of "gender-specific" and "derogatory" insults against women in the workplace "constituted repeated and intentional discrimination directed at women as a group, if not at [the plaintiff] specifically").[14]

Based on this precedent, the court thus finds that it was clearly established that Sheriff Dorning's alleged actions were unconstitutional. Taking Massey's allegations as true, as the court must, the alleged conduct occurred daily, Sheriff Dorning was "physically present" and failed to address it, and, in fact, he told a new female employee that "men do what men do." Basically, Sheriff Dorning allegedly did "nothing in response to knowledge of a subordinate['s] sexual harassment and discrimination and the creation of a hostile work environment." *Cross*, 49 F.3d at 1503. Accordingly, Sheriff Dorning is not entitled to qualified immunity, and the motion to dismiss the § 1983 claim against him for unlawful discrimination is due to be denied.

---

[14] Because the elements for discrimination are the same, it makes no difference that *Reeves* is a Title VII case. *See Snider*, 344 F.3d at 1328–30. The *Snider* Court held that a Title VII holding in a same-sex harassment case did "not fairly put Defendants on notice that their alleged conduct clearly violated a federal *constitutional* right," because it was not clear that "same-sex harassment was actionable under *both* the Equal Protection Clause and Title VII." *Id.* at 1328 & n.4. No such issue is present here, since it has long been established that, "in the context of different-gender harassment, the Equal Protection Clause provides a right to be free from unlawful sexual harassment in public employment." *Id.* at 1329 n.6.

## 4.  Section 1983 Claim for Failure to Train and Supervise

Massey alleges that Sheriff Dorning is responsible for the training and supervision of employees, including with regards to personnel policies.  Doc. 25 at 24.  She alleges that he failed to properly train and supervise his employees concerning sexual harassment.  "As a condition of employment," she alleges that employees are required to agree to the Madison County Employee Handbook, which includes a sexual harassment policy, and an "Acknowledgement of Process for Reporting Harassment," but otherwise received no training on sexual harassment.  *Id.* at 5–6.  She further alleges that a properly trained and supervised employee would not have engaged in gender-based discrimination.  *Id.*  In her telling, a properly trained employee would have known the conduct was discriminatory.  *Id.*  And if they were properly supervised, such conduct would have been subject to discipline.  *Id.*  Massey asserts that Sheriff Dorning's failure to adequately train and supervise was deliberately indifferent because the need for training and supervision was obvious.  *Id.* at 24–25.  She adds that Sheriff Dorning knew or should have known that a failure to adequately train and properly supervise the employees would lead to discrimination.  *Id.* at 24.

Failure-to-train and failure-to-supervise are separate claims.  *See Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (observing "that there are only 'limited circumstances' in which an allegation of a failure to train or supervise

can be the basis for liability under § 1983"); *Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1175 (11th Cir. 2001) (analyzing failure-to-train and failure-to-supervise separately).[15] That said, the standard for liability is the same for both claims. *Dubose v. City of Hueytown*, 2016 WL 3854241, at *6 (N.D. Ala. 2016) ("[W]hile the failure to train, supervise, and discipline can be separate claims, the same standard for liability applies . . . .").

### a. Failure to Train

To establish a failure-to-train claim under § 1983, the plaintiff must show (1) that the existing training program is inadequate; (2) that adequate training would have prevented the injury; and (3) that the supervisor's failure to adequately train the employees amounts to deliberate indifference to the rights of persons with whom the employees come into contact. *See City of Canton v. Harris*, 489 U.S. 378, 388–91 (1989); *see also Keith*, 749 F.3d at 1052. Deliberate indifference requires that "the supervisor had actual or constructive notice that a particular omission in the training program" caused the injury, and that "armed with that knowledge the supervisor chose to retain that training program." *Keith*, 749 F.3d at 1052 (citation omitted). Ordinarily, "a pattern of similar constitutional violations by untrained employees" is necessary to establish actual or constructive notice. *Id.* at 1053 (citation omitted). But in some circumstances, the

---

[15] *Thomas ex rel. Thomas* was vacated in *Thomas v. Roberts*, 536 U.S. 953 (2002), and then reinstated in full in *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950 (11th Cir. 2003).

consequences of failing to train employees may be "so obvious, and the inadequacy so likely to result in the violation of constitutional rights," that pointing to a pattern of similar violations is unnecessary. *City of Canton*, 489 U.S. at 390.

Sheriff Dorning argues that Massey failed to allege that he was on notice of the need for further training. Massey alleges that because Sheriff Dorning was "physically present" at the office, he knew or should have known about the widespread harassment. Sheriff Dorning relies on *Smith v. LePage*, 834 F.3d 1285, 1298 (11th Cir. 2016), for the proposition that "mere presence" is not enough to establish supervisory liability under § 1983. In *LePage*, the Court determined that an officer's "mere presence at the scene was not enough" to establish that he personally participated in shooting a plaintiff. *LePage*, 834 F.3d at 1298. Here, neither Massey nor the court is suggesting that because Sheriff Dorning was present at the office, he personally participated in the offensive behavior that turned the office into a hostile work environment. Instead, the inference is that because Sheriff Dorning was present, he must have been aware of the "near daily" conduct that Massey says occurred openly, doc. 25 at 9, or at least he should have been aware. Ultimately, if Sheriff Dorning was present so that he witnessed a pattern of constitutional violations, that's actual or constructive notice.

Massey's failure-to-train claim is due to be dismissed for a different reason. The gist of her claim seems to be that employees at the sheriff's office should have

received some sort of training to make clear that sexual harassment is prohibited. But in this day and age, it is clear even without training that it is inappropriate and unacceptable to engage in the sort of conduct alleged here. Put differently, "[w]here the proper response is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 490 (11th Cir. 1997) (citation omitted) (alteration accepted).[16] For this reason, Massey has failed to adequately allege that any deficiency in the training was actually responsible for the alleged harassment that took place, or that any supplement to the training would have prevented the misconduct.

### b. Failure to Supervise

However, the failure-to-supervise claim survives. Massey alleges that Sheriff Dorning is liable for violating her right to equal protection because he failed to take action to correct the hostile work environment in his workplace. To succeed on her claim, Massey must show (1) that Sheriff Dorning failed to discipline his employees for sexual harassment; (2) that adequate discipline would

---

[16] The holding from *Sewell* should not be misconstrued. The court does not mean to suggest that sexual harassment training is always unnecessary. The point is simply that such training is not needed for employees to know that they cannot refer to women as "bitches" and "whores" at work. Similarly, when an employee misbehaves, *Sewell* does not excuse a supervisor from taking remedial action just because the misconduct was obviously wrong. It should go without saying that the need for discipline is at its most acute when the wrongfulness of the conduct is obvious.

have corrected the harassment; and (3) that his failure to discipline amounts to deliberate indifference. *See City of Canton*, 489 U.S. at 388–91; *see also Thomas ex rel. Thomas*, 261 F.3d at 1175 (applying the same standard to a "failure to supervise [and] discipline" claim).

If a supervisor is on notice of widespread harassment, he or she has a duty to take adequate steps to stop the misconduct. *See Keith*, 749 F.3d at 1048 (stating that a supervisor is liable under § 1983 for the unconstitutional acts of his subordinates "when a history of widespread abuse puts the supervisor on notice of the need to correct the alleged deprivation, and he fails to do so"). Massey alleges that Sheriff Dorning was present for the harassment and did nothing to stop it. In fact, he purportedly told an incoming female employee that "men do what men do," effectively communicating a policy that there would be no ramifications for sexual harassment. If a supervisor knows of widespread harassment in the workplace, and not only fails to take remedial action but purportedly conveys that such conduct is tolerated, it seems fair to conclude that the supervisor is deliberately indifferent to the serious risk of discrimination.

Furthermore, it was clearly established that it is unconstitutional for a supervisor to do nothing in the face of widespread sexual harassment in the workplace. *See Williams*, 341 F.3d at 1268 (recognizing a clearly established right under the equal protection clause to be free from gender-based discrimination n

public employment); *Ellerth*, 524 U.S. at 759 (acknowledging an employer's obligation to take appropriate action to stop sexual harassment "if it knew or should have known about the conduct"); *Cross*, 49 F.3d at 1503 (finding a clearly established violation of the equal protection clause for an employer to do "nothing in response to knowledge of . . . sexual harassment and discrimination"); *cf. Mathews v. Crosby*, 480 F.3d 1265, 1275 (11th Cir. 2007) (finding that a supervisor violated clearly established law when he failed to adequately respond to notice of widespread abuse by a prison official). Accordingly, Sheriff Dorning is not entitled to qualified immunity on this claim.

To summarize, the Sheriff's motion is due to be granted as to the § 1983 claim against him individually for failure to train, and due to be denied in all other respects.

## B. The County

### 1. Title VII Claims

The County moves to dismiss the Title VII claims against it because it is not Massey's employer for the purposes of Title VII. For now, the court will deny the County's motion. Massey has raised a plausible argument that Amendment No. 694 to the Alabama Constitution, together with Alabama Act No. 941 of 1973, might make Madison County a joint employer of the sheriff's office. To resolve this issue, the court would benefit from a better-developed record through

discovery. The County is free to raise this issue again at the dispositive motions stage.

## 2. Section 1983 Claim for Equal Protection Violation

"A local government," such as a county, "may be held liable under § 1983 only for acts for which it is actually responsible." *Turquitt v. Jefferson County*, 137 F.3d 1285, 1287 (11th Cir. 1998) (en banc). Counties "are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60–61 (2011). Acts for which a local government is actually responsible include "the decisions of [its] lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* at 61.

However, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the [county]. The plaintiff must also demonstrate that . . . the [county] action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the [county] action and the deprivation of federal rights." *Board of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). If the county's "action *itself* violates federal law, or directs an employee to do so" that "necessarily establishes that the [county] acted culpably." *Id.* But if the plaintiff's theory is that a "facially lawful [county] action has lead an employee to violate [her] rights," the plaintiff "must demonstrate that the [county] action was taken

33

with 'deliberate indifference' as to its known and obvious consequences." *Id.* at 406–07. "Simple negligence and even heightened negligence is not enough." *Id.* at 407.

Massey does not allege that the County had a formal policy authorizing sexual harassment. Nor could she: the County has a policy expressly prohibiting sexual harassment. As best the court can tell, Massey alleges that sexual harassment in the sheriff's office is so persistent and widespread that the County has implicitly ratified the practice as a custom.

The Eleventh Circuit has held that sexual harassment can be "so persistent and widespread as to amount to a unconstitutional policy or custom." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001). Crucial to the Court's holding was that the municipality was aware of the widespread harassment. *Id.* ("[T]he evidence establishes without any question that sexual harassment was the on-going, accepted practice at the City and that the City Commission, Mayor, and other high ranking city officials knew of, ignored, and tolerated the harassment."). The Court specifically found that "the final policymakers . . . were aware of the problem and were completely indifferent to it." *Id.* Likewise, in this case, to establish a custom, Massey must show that the County was aware of widespread harassment in the sheriff's office and failed to take action to address it.

Massey alleges that the County was on notice because Sheriff Dorning and Director Howell knew about the harassment. Massey asserts that both Sheriff Dorning and Director Howell are final policymakers for the County regarding personnel policies at the sheriff's office. In that capacity, their notice could be imputed to the County. The court must first decide, then, whether Sheriff Dorning or Director Howell is a final policymaker for the County.

A final policymaking official is one "who speak[s] with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular . . . violation at issue." *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997). The focus is on whether the official has final policymaking authority over the "particular area" at issue, and whether the official represents the County or some other entity (like the State) when acting in that capacity. *See id.* at 786. An official is not a final policymaker if his or her decision is "subject to meaningful administrative review." *Lewis v. City of Union City*, 934 F.3d 1169, 1190 (11th Cir. 2019). This inquiry "will necessarily be dependent on the definition of the official's functions under relevant state law." *McMillian*, 520 U.S. at 786.

The sheriff is not a final policymaking official for the County. Under well-established Alabama law, a "sheriff is not an employee of a county for purposes of imposing liability on the county under a theory of respondeat superior. A sheriff is

an executive officer of the State of Alabama." *Parker v. Amerson*, 519 So. 2d 442, 442–43 (Ala. 1987). Amendment 694 to the Alabama Constitution, which Massey cites in support of her contention that the County is her employer for Title VII purposes, does not change that. It provides that the "*employees* of the Office of the Sheriff of Madison County, except for the chief deputy, shall be under the authority of the Personnel Board of Madison County." Ala. Const. amend. 694 (emphasis added). It does not change the status of the sheriff.

The Personnel Director, in contrast, is a policymaking official for the County. He is the director of the personnel system established by the Act. He is charged with administering "all provisions of this Act and the rules established hereunder, not specifically reserved to the Personnel Board." Act No. 941 § 3(b). Focusing on the issue here, the Board adopted a harassment policy for employees in the Classified Service. Director Howell is charged with administering the harassment policy. Victims and supervisors are told to report claims to Director Howell. Drawing inferences from the complaint in favor of Massey, it appears that Director Howell is responsible for investigating claims of harassment and makes the final decision about whether an employee has violated the harassment policy. Based on these allegations and inferences, Massey has pled sufficient facts to show that Director Howell is a final policymaker for the County with regard to enforcing the harassment policy.

But even assuming that Director Howell is a final policymaker, Massey has failed to allege that he was on notice of a custom condoning sexual harassment in the sheriff's office. Unlike Sheriff Dorning, who was allegedly present in the office for the discriminatory conduct, Massey does not allege that Director Howell was present for any of it. She alleges only that he "personally received complaints" about discrimination in the sheriff's office. She does not say what these complaints contained—that is, whether the complaints were about isolated incidents or conveyed the whole scope of the discriminatory conduct. This allegation is simply not enough to establish that Director Howell, and thus the County, were on notice of a persistent and widespread practice of harassment in the sheriff's office. For these reasons, the § 1983 claim against the County for an equal protection violation is due to be granted.

### 3. Section 1983 Claim for Failure to Train

To be liable, a local government's "failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Connick*, 563 U.S. at 61. "Deliberate indifference is a stringent standard of fault, requiring proof that a [county] actor disregarded a known or obvious consequence of his action." *Id.* In light of this standard, county policymakers must have had "actual or constructive notice that a particular omission in their training program causes [county]

employees to violate citizens' constitutional rights." *Id.* Ordinarily, establishing notice requires a "pattern of similar constitutional violations by untrained employees." *Id.* at 62.

Massey's failure-to-train claim against the County fails for the same reason as her equal protection claim against the County. Massey failed to allege that the County was on notice of a widespread practice of harassment in the sheriff's office. Thus, the County could not have been on notice "that a particular omission in their training program causes" employees in the sheriff's office to harass their female co-workers. To summarize, except as to the Title VII claims, the County's motion is due to be granted.

### C. Director Howell

The only claim that Massey brings against Director Howell is a § 1983 claim for failure to train. This claim fails for the same reason: Massey failed to adequately allege that Director Howell had notice of a "pattern of similar constitutional violations by untrained employees."

### IV. Conclusion and Order

Sheriff Dorning's motion to dismiss, doc. 33, is **DENIED** with respect to the Title VII claims and the § 1983 claims for unequal treatment and for failure to supervise, and **GRANTED** with respect to the § 1983 claim for failure to train. The County's motion to dismiss, doc. 29, is **DENIED** with respect to the Title VII

claims against it, and **GRANTED** with respect to the § 1983 claims against it. Finally, Director Howell's motion to dismiss, doc. 31, is **GRANTED**, and Director Howell is **DISMISSED** as a defendant from this case.

      **DONE** the 17th day of February, 2020.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE